IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  11-cv-01057-LTB-CBS

NORMAN W. ROOKER,

        Plaintiff,

v.

OURAY COUNTY, a County of the State of Colorado, acting through
THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF OURAY, and
A.D. YEOWELL, M.D., in his official and individual capacity,
CONNIE HUNT, in her official capacity, and
SHERRY PECK, in her official capacity,

        Defendants.

_____

MEMORANDUM OPINION AND ORDER
_____

Babcock, J.

        This matter is before me on two motions, each filed pursuant to Fed. R. Civ. P. 12(b)(1) and

12(b)(6). The first is the Motion to Dismiss **[Doc # 6]** filed by Ouray County (the "County") acting

through the Board of County Commissioners, Connie Hunt ("Hunt"), and Sherry Peck ("Peck")

(collectively, "Ouray").  Their motion requests an order dismissing with prejudice Plaintiff Norman

W. Rooker's complaint against them. The second motion is Defendant A.D. Yeowell's ("Yeowell"),

Motion to Dismiss **[Doc #13]** that seeks an order dismissing Plaintiff's claims against him.  After

consideration of the parties' arguments, for the reasons herein I GRANT both motions in part and

DENY them in part as moot according to my rulings below.

## I. Background

Plaintiff's complaint alleges the following: Plaintiff is a certified emergency medical technician-paramedic ("EMT-Paramedic"), who worked for the County as the chief paramedic for Ouray County Emergency Medical Services ("OCEMS"), from April 28, 2005, until May 14, 2010. He was responsible for implementing certain quality programs mandated by Colorado law and for auditing the performance of those involved in providing emergency care. Yeowell was the medical director for OCEMS during the relevant period.  The County granted him final policy making authority in all matters related to medical supervision of OCEMS.  During the relevant period, Hunt was the County's administrator, and Peck was its human resources director.

Plaintiff's suit stems from an investigation he initiated regarding an April 21, 2010, OCEMS ambulance response to an emergency call involving the home delivery of a new-born baby who was not breathing.  The paramedic at the scene requested permission from Yeowell to intubate the infant, which was standard procedure.   Yeowell refused. Air ambulance was subsequently ordered to transport the infant to a Montrose, Colorado, hospital, but there was a delay in its arrival. When the ambulance was ordered, Plaintiff and Yeowell discussed whether the air ambulance could be sent without delay, for if not, it would be faster to transport the infant by regular ground ambulance. The air ambulance was delayed because Yeowell decided to have it return to pick up a pediatrician after it had left. When the air ambulance finally arrived, the pediatrician tried unsuccessfully to intubate the infant, causing further delay.

Plaintiff commenced a quality improvement audit of the above incident on April 21, 2010. That audit established that the air ambulance's delayed arrival, coupled with the pediatrician's repeated unsuccessful attempts to intubate, caused a significant delay to the infant patient receiving

the care that is the national standard in these situations.

After learning that Plaintiff had initiated an audit of the April 21, 2010, occurrence, Yeowell immediately suspended him. Yeowell informed Plaintiff and Ouray that he would no longer allow Plaintiff to work as an EMT-Paramedic under his medical supervision. Ouray then removed Plaintiff from the work schedule. Then, on May 10, 2010, Ouray constructively terminated Plaintiff for initiating the audit by forcing him to accelerate his previously scheduled retirement date. Both the suspension and termination were effected without an opportunity to be heard.

Plaintiff filed this action on April 21, 2011, bringing nine claims for relief. The first two are federal claims. First, Plaintiff asserts that Ouray and Yeowell unlawfully deprived him of his property and liberty without due process of law in violation of 42 U.S.C. § 1983. Second, they conspired to do the same in violation of 42 U.S.C. § 1985(3). The remaining claims are state law claims. Plaintiff asserts that I have original jurisdiction over his federal claims under 28 U.S.C. §§ 1331 and 1343, as well as under 42 U.S.C. §§ 1983, 1985, and 1988, and that I have supplemental jurisdiction over his remaining state claims under 28 U.S.C. § 1367(a).

## II. Standard of Review

### A. Rule 12(b)(1)

Whether a public entity is protected by sovereign immunity under the Colorado Governmental Immunity Act (the "CGIA"), Colo. Rev. Stat. § 24-10-101 *et seq.*, is an issue of subject matter jurisdiction. *Swieckowski by Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1383-84 (Colo. 1997). If a public entity has sovereign immunity under the CGIA, the court does not have jurisdiction over the claims asserted against it, *see id.* at 1384, and the court is empowered to grant a motion to dismiss the case or claims made pursuant to Fed. R. Civ. P. 12(b)(1). *See* Fed.

3

R. Civ. P. 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction . . . ."). Furthermore, discovery must be stayed. *See* Colo. Rev. Stat. § 24-10-108.

### B. Rule 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombley*, 550 U.S. at 555.

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must assume the truth of all well-pleaded facts in the complaint and draw all reasonable inferences therefrom in the light most favorable to the plaintiff. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). Legal conclusions, however, do not receive this treatment. *Iqbal*, 129 S.Ct. at 1949. In evaluating whether the complaint states plausible claims for relief, I consider the complaint itself and the County Personnel Manual (the "Manual"), which Ouray and Yeowell attached to their motions. I may consider the Manual because it is integral to Plaintiff's claims, as he relies upon and quotes it in his complaint, and Plaintiff does not dispute the document's authenticity. *See Jacobsen v. Deseret*

*Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) ("[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity").

### III. Discussion

Ouray argues that all of the claims brought against it should be dismissed with prejudice. Yeowell argues that the claims asserted against him should also be dismissed.  Because Ouray and Yeowell make the same arguments with respect to many of Plaintiff's claims, I present and address their motions as one where applicable in the interest of brevity.  Where I do present them jointly, I will refer to "the motions" or "both motions."  Where I feel it is necessary to make specific references to an argument in one of the motions, I will refer to that motion specifically.  Because the motions, together, seek to dismiss all nine of Plaintiff's claims, my analysis will proceed *seriatim*–to wit, I examine each claim in turn and analyze the arguments made for dismissing it.

I address a preliminary issue raised in both motions at the outset.  Hunt and Peck are sued in their official capacities, Yeowell in his official and individual.  Ouray argues that the claims against Hunt and Peck should be dismissed with prejudice because Plaintiff is also suing the County, making the claims against them redundant and superfluous.  Yeowell contends that the claims against him in his official capacity should likewise be dismissed for those reasons.  Plaintiff has no objection to these arguments.  Accordingly, I grant the portion of Ouray's motion seeking to dismiss with prejudice the claims against Hunt and Peck, and I grant the portion of Yeowell's motion seeking to dismiss the claims against him in his official capacity. This ruling does not affect the claims against Yeowell in his individual capacity.

### A. The § 1983 Claim Against Ouray and Yeowell

Plaintiff first alleges that Ouray and Yeowell deprived him of his property and liberty without due process of law in violation of § 1983 by suspending and terminating him without giving him an opportunity to be heard. Ouray's motion first argues that Plaintiff fails to state a § 1983 claim against the County under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and both motions contend that the claim must be dismissed because Plaintiff fails to sufficiently allege a property or liberty interest required to invoke due process protection. I address the second, shared argument first and agree with Ouray and Yeowell. I therefore need not and do not address whether Plaintiff states a *Monell* claim against the County.

I engage in a two-step inquiry to determine whether Plaintiff was denied procedural due process: "(1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998). Regarding the first step, "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). I thus first consider whether Plaintiff possessed such an interest, beginning with property.

### 1. Property Interest

"The Supreme Court has stated that property interests are not created by the Constitution, but by existing rules or understandings that stem from independent sources, 'such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.' " *Darr v. Town of Telluride, Colo.*, 495 F.3d 1243, 1251 (10th Cir. 2007) (quoting *Roth*, 408 U.S. at 577). Although opaque, Plaintiff asserts that he has planted an adequate property

interest tree in his complaint from which four distinct property interests sprout: (1) continued employment as an EMT-Paramedic with the County; (2) his EMT-Paramedic certification and right to practice as an EMT-Paramedic; (3) continued supervision by Yeowell; and (4) not to be terminated without a hearing and review under Section 10-3(B) of the Manual.  I address these in turn.

### i. Continued Employment

"The standard for the existence of a property right in employment is whether the plaintiff has a legitimate expectation of continued employment." *Hennigh*, 155 F.3d at 1253.  For example,  a public employee may possess such an interest in his employment if he has tenure, a contract for a fixed term, an implied promise of continued employment, or if state law allows for his dismissal only for cause or its equivalent.  *See Darr*, 495 F.3d at 1251 (citing cases); *see also Dickey v. Adams Cnty. Sch.  Dist. No. 50*, 773 P.2d 585, 586 (Colo. App. 1988) (citing cases).  Absent one of these fetters, in Colorado,  an employee is presumed to be employed at-will and can be terminated without cause or notice, and his termination does not give rise to a cause of action.  *Watson v. Pub. Serv. Co. of Colo.*, 207 P.3d 860, 867-68 (Colo. App. 2008); *Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540, 546 (Colo. 1997).  Local government employees are no different: they "hold their posts at the pleasure of the proper local government authorities and can be dismissed without cause, in the absence of restrictions or limitations provided by law." *Fremont RE-1 Sch. Dist. v. Jacobs*, 737 P.2d 816, 820 (Colo. 1987).  Indubitably, an at-will public employee does not have a property interest in his continued employment.  *Johnson v. Jefferson Cnty. Bd. of Health*, 662 P.2d 463, 471 (Colo. 1983) ("An employee who serves 'at the pleasure' of his employer generally may be discharged at any time without formal cause or procedure."); *Bishop v. Wood*, 426 U.S. 341, 346 n.8 (1976) ("In this case, a holding that as a matter of state law the employee 'held his position at the will and

pleasure of the city' necessarily establishes that he had *no* property interest."); *Darr*, 495 F.3d at

1252 ("At-will employees lack a property interest in continued employment.").

Plaintiff claims that he had a property interest in his continued employment, but he does not

sufficiently allege a source from which this interest stems.  Plaintiff does not allege that he had an

individual employment contract, written or otherwise.  That therefore cannot be the source of the

alleged property interest.  Plaintiff instead alleges that the Manual constituted a contract, citing

Section 10-3(B) as the operative provision.  That section states that "[i]n all disciplinary actions

involving termination of employment, the County Administrator shall provide the employee an

opportunity to be heard prior to implementation."

But looking specifically at Section 10-3(B), it clearly does not address the *reason* for which

Plaintiff could be terminated.  It outlines termination procedures.  Put differently, that section, even

when viewed in a light most favorable to Plaintiff, does not promise him continued employment,

employment for a fixed term, or that he can be terminated only for cause or the like, in which case

Plaintiff may have had a property interest in his continued employment.  *See, e.g.*, *Darr*, 495 F.3d

at 1251 (citing cases), *and Workman v. Jordan* 32 F.3d 475, 479 (10th Cir. 1994) (finding that

plaintiff-employee had a property interest in his continued employment because the defendant-

employer's employee manual prescribed that plaintiff could be terminated only for cause).

More broadly, the Manual unequivocally specifies that it was not a contract or agreement

and that Plaintiff was an at-will employee without an interest in his employment.  Section 1.2 states

that "[i]t is the policy of the County of Ouray that all employees who are not elected to their office

by the voters, nor have a written, individual employment contract with the County *are employed at

the will of the County for an indefinite period*." Ouray's Mot. Ex. B at 11 (emphasis added).

Furthermore, the Manual's first paragraph, Section 1.1, states the following:

> Nothing herein is intended nor shall it be construed or deemed to create any contract between the County and any of its officers or employees, nor is it intended nor shall it be construed to create any property rights in employment or an expectation of continued employment, or in the continuation of any benefits of any County employee or officer. The County's failure to adhere to any provision hereof shall not create any additional rights or remedies for any employee.

*Id.* These provisions demonstrate that Plaintiff's assertion that Section 10-3(B) transformed his employment into something other than at-will is implausible. *See, e.g., Darr*, 495 F.3d at 1252 (relying on a statement in an employee handbook that "[n]othing in these policies is intended to modify the Town's at-will employment policy" in holding that the handbook did not created a property interest in his continued employment, regardless of how employer handled the termination), *and Romero v. Denver Pub. Sch. Dist. No. 1*, 2010 WL 2943528, *5, *9 (D. Colo. July 22, 2010) (concluding that procedures in an employee handbook did not create a property interest in employment in part because the manual prescribing the procedures contained a disclaimer conspicuously stating that "[t]he procedures do not change the at-will status of classified employees"). To be sure, an entity's conduct may negate the express disclaimers in its employment manual, thereby raising the factual issue as to whether the entity and its employees' mutual understandings created a property interest. *See, e.g., Kingsford v. Salt Lake City Sch. Dist.*, 247 F.3d 1123, 1131-32 (10th Cir. 2001). But Plaintiff does not offer a sufficient allegation of this kind. His averment that the County "demonstrated a willingness to be bound" by the Manual is bereft of factual support. Plaintiff, then, was an at-will employee who lacked a due process protected property interest in his continued employment absent some other circumscription.

Plaintiff relies on 3 Colo. Code Regs. 713-6, Rule 500 § 3.2(g) ("Section 3.2(g)"). That regulation delineates that the responsibilities of a medical director–here Yeowell–include

"[n]otify[ing] the [Colorado Department of Public Health and Environment (the "CDPHE")] . . . of his or her termination of the supervision of a department-certified EMT for reasons that may constitute good cause for disciplinary sanctions pursuant to the State EMS Rules." Section 3.2(g). Plaintiff argues that this created his property right to continued employment by making him an employee who could be terminated only for cause.

This argument is untenable.  Section 3.2(g) does not prescribe under what circumstances a medical director can terminate an EMT-Paramedic–let alone that he can do so only for cause. Rather, the regulation's plain language, *see Granite State Ins. Co. v. Ken Caryl Ranch Master Ass'n*, 183 P.3d 563, 567 (Colo. 2008) ("Well-established principles of statutory construction dictate that we must first examine the plain language of the statute."), indicates that Yeowell needed to notify the CDPHE *if* he terminated Plaintiff on grounds that may constitute good cause so it could consider whether to mete out its own sanctions.  It patently does not modify Ouray's right to terminate Plaintiff for any reason without notice, nor does it otherwise grant him any right to continued employment.  Plaintiff does not allege any other basis for his asserted property interest in his continued employment.  He therefore fails to sufficiently allege that he was anything but an at-will employee.  As a corollary, he did not have a property interest in his continued employment.  *See Johnson*, 662 P.2d at  471; *Bishop*, 426 U.S. at 346 n.8; *and Darr* 495 F.3d at 1252.

## ii. Certification and Right to Practice

The second branch of Plaintiff's purported property interest tree is his professional certification and right to practice as an EMT-Paramedic, which he argues Ouray and Yeowell unconstitutionally deprived him of by suspending and terminating him.  The revocation or removal of a certification that is "essential in the pursuit of a livelihood" requires procedural due process

under the Fourteenth Amendment. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1150 (10th Cir. 2001). That Plaintiff needed a certification to work as an EMT-Paramedic does not end my inquiry, as the due process inquisition is two-steps. "Once [a] plaintiff has identified a clearly established right, [I] examine whether []he has come forward with the necessary factual allegations to establish that defendants violated that right." *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 578 (10th Cir. 1996) (internal citation omitted).

Plaintiff's complaint is deficient in that it does not allege that Ouray or Yeowell revoked, suspended, or otherwise violated his EMT-Paramedic certification or right to practice elsewhere. It alleges only that they suspended and terminated *him* from working for *them*. Plaintiff therefore fails to allege a plausible deprivation of his certification or right to practice his profession. *See, e.g.*, *Watson*, 75 F.3d at 578 ("As to plaintiff's allegations that defendants denied her due process with regard to her property right to her nursing license, she has not shown enough: DOPL took no action to revoke or suspend her license."); *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1269 (10th Cir. 1989) (concluding that because plaintiff-lawyer was not foreclosed from practicing law, he failed to state a deprivation of property interest; *Workman*, 32 F.3d at 479 (holding that plaintiff failed to state a deprivation of a property interest because a procedurally adequate posttermination hearing resulted in plaintiff's reinstatement and back pay for the temporary deprivation of his employment).

### *iii. Continued Supervision*

Plaintiff's third asserted property interest is a slight variation on his first two. He argues that he had a protected property interest in Yeowell continuing to supervise him, based upon the following Colorado regulations: The County must require each ambulance service operating in its jurisdiction to have a medical director to supervise the medical acts performed by ambulance service

personnel.  *See* 6 Colo. Code Regs. 1015-3 § 12.8.1.  The medical director's duties include monitoring and supervising the medical field performance of each supervised emergency medical service agency's department-certified EMT.  *See* 3 Colo. Code. Regs. 716-6, Rule 500 § 3.2(d).  The County's ambulance service licensure application must include the medical director's attestation that he is willing to provide medical oversight and a medical continuous quality improvement program for the ambulance service.  *See id.* § 12.8.2.  Finally, the medical director must notify the CDPHE of his termination of the supervision of a department-certified EMT if that termination was for a reason that may constitute good cause for disciplinary sanctions.  Section 3.2(g).

From a plain reading, *see Granite*, 183 P.3d at 567, these rules do not circumscribe Yeowell's or the County's right to terminate Plaintiff for any reason without notice, even when they are viewed in a light most favorable to Plaintiff. Nor do they delineate any benefits flowing to EMT-Paramedics.  Plaintiff does not provide case law to the contrary.  An argument that they nevertheless synthesize a property interest in continued supervision by Yeowell is fallacious and non-sequitur. Vehemence that these regulations erect a property interest in continued supervision is not enough because Plaintiff "clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577.  Plaintiff's assertion is thus unreasonable and is at best mere speculation.

Moreover, because the proffered regulations do not alter the terms of Plaintiff's employment, he remains an at-will employee lacking a property interest in the whole that was his continued employment.  *See Johnson*, 662 P.2d at 471; *Bishop*, 426 U.S. at 346 n.8; *and Darr* 495 F.3d at 1252.  And if he did not have any property interest in his continued employment, it follows that he cannot claim a property interest in his mere continued supervision by Yeowell.  For these reasons,

I conclude that Plaintiff fails to sufficiently allege that he had a protected property interest in Yeowell continuing to supervise him.

### iv. Termination Procedures

I now examine the fourth and final branch of Plaintiff's purported property interest tree. Plaintiff cites Section 10-3(B) of the Manual and asserts that it catalyzed a property right not to be terminated without a hearing and review by Hunt. Recall that the section states that "[i]n all disciplinary actions involving termination of employment, the County Administrator shall provide the employee an opportunity to be heard prior to implementation."

I disagree with Plaintiff. Without a property interest in his continued employment, *see* Part III.A.1.i, *supra*, a right to this procedure is exactly that–an entitlement to nothing but a procedure. And "it is well established that 'an entitlement to nothing but procedure' cannot 'be the basis for a property interest.' " *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1085 (10th Cir. 2006) (quoting *Town of Castle Rock, Colo. v. Gonzalez*, 545 U.S. 748, 764 (2005)); *accord Teigen*, 511 F.3d at 1081; *see also Asbill v. Hous. Auth. of Choctaw Nation of Okla.*, 726 F.2d 1499, 1502 (10th Cir. 1984) ("By themselves, . . . procedural protections do not support a 'legitimate claim of entitlement' to future employment."); *Workman*, 32 F.3d at 479 ("Property cannot be defined by the procedures provided for its deprivation any more than can life or liberty.") (internal quotations omitted). This applies equally to procedural guarantees set forth in employee handbooks. *See Burger v. Univ. of Okla. Bd. of Regents*, 95 F.3d 987, 990-91 (10th Cir. 1996) ("Bunger and Pradhan also contend that procedural guidelines in the Faculty Handbook effectively created a property interest in reappointment, of which they could be divested only according to the terms of the specified procedures. This tautological argument fails because it attempts to construct a property

13

interest out of procedural timber . . .  Property cannot be defined by the procedures provided for its

deprivation any more than life or liberty.  The university's promise that it would follow certain steps

in considering the professors' reappointment did not beget a property interest in reappointment.")

(internal quotations and citations omitted). The Tenth Circuit has explained that

> [t]his is because process is not an end in itself, but instead serves only to protect a
> substantive interest to which the individual has a legitimate claim of entitlement.
> Although detailed and extensive procedural requirements may be relevant as to
> whether a separate substantive property interest exists the procedures cannot
> themselves constitute the property interest.

*Teigen*, 511 F.3d at 1081 (internal citations and quotations omitted). Section 10-3(B), by itself, did

not effectuate a right to the procedures described therein or to continued employment. The Manual's

first two sections also demonstrate that Plaintiff's asserted interest in the procedures is implausible

and thus cannot withstand the motions.  *See* Manual §§ 1.1, 1.2, *supra*.

But Plaintiff says that *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo. 1987),

stands for the dual propositions that Section 10-3(B) creates property interests in continued

employment and in the termination procedures therein.  This contention crumbles under Rule

12(b)(6) pressure.  *Keenan* did not hold that the terms in the employee handbook generated a

protected due process property interest in continued employment.  *See Keenan*, *supra*.  Rather, it

held that "[a]n employee originally hired under a contract terminable at will may be able to enforce

the termination procedures in an employee manual under one of the following alternative theories[:]"

ordinary breach of contract or promissory estoppel.  *Id.* at 711-13.  The case did not involve due

process claims.  *See id.*  For purposes of due process claims under the Fourteenth Amendment and

§ 1983, *Keenan* does not support Plaintiff's position.

To be sure, the Colorado Supreme Court has held that a terminated public employee may state a claim for relief for deprivation of property without due process of law "if rules or mutually explicit understandings, which the public employer was authorized to enact or make the basis of a binding agreement, create a sufficient expectancy of continued employment to give the employee a legitimate claim of entitlement." *Adams Cnty. Sch. Dist. No. 50 v. Dickey*, 791 P.2d 688, 695 (Colo. 1990). "Courts addressing this issue have generally held that when state law recognizes that employee handbooks may form the basis of a contract action, the personnel policies and regulations in question determine whether the employee possessed a legitimate claim of entitlement under the due process clause." *Id.*; *see, e.g*, *Workman*, 32 F.2d at 479 (relying on provision in employee handbook stating that plaintiff could be terminated only "for cause" to conclude that plaintiff had an interest in his continued employment).

*Dickey* does not salvage Plaintiff's claim.  The Manual clearly did not create a contract between the parties.  *See* Manual §§ 1.1, 1.2, *supra*.  Plaintiff does not sufficiently allege that any of the individual Ouray defendants' conduct negated the Manual's express language.  Furthermore, assuming, *arguendo*, that the Manual constituted a contract, unlike the plaintiff in *Dickey*, Plaintiff fails to sufficiently plead a rule or other mutually explicit understanding, from the Manual or otherwise, bridling the reason for which he could be terminated and thereby creating a sufficient expectation of continued employment–the critical component here.  *See, e.g.*, *Dickey*, 791 P.2d at 689 (where the plaintiff was a "classified employee" who could only be terminated if his "work is of such quality to require discharge").  Without alleging such a bridle, Plaintiff was an at-will employee.  *See Watson*, 207 P.3d at  867-68; *Fremont*, 737 P.2d at 820.  Consequently, he lacked a property interest in his continued employment.  *Johnson*, *supra*; *Bishop*, *supra*; *Darr, supra*.

15

The assertion that *Keenan* shows that Plaintiff had a due process protected property interest in the termination procedures themselves is faulty too. Again, *Keenan* did not examine whether the handbook created a due process property interest. To the extent the case raised uncertainty about the issue, the Tenth Circuit has answered: an employee does not have a due process protected interest in procedures alone, including those termination procedures promulgated in employee handbooks. *See Gonzalez*, 545 U.S. at 764; *Teigen*, 511 F.3d at, 108; *Asbill*, 726 F.2d at 1502; *Workman*, 32 F.2d at 479; *and Burger*, 95 F.3d at 990-91.

I conclude that Plaintiff's alleged property interest withers under 12(b)(6)'s glare because it is not rooted in an adequate quantum of factual matter. Plaintiff's claim that Ouray and Yeowell deprived him of protected property interests in violation of his due process is instead "supported by mere conclusory statements," rendering the claim implausible. Ergo, it cannot withstand the motions. *See Iqbal*, 129 S.Ct. at 1949. Plaintiff's due process claim therefore hinges on whether he sufficiently alleged the deprivation of a protected liberty interest.

### 2. Liberty Interest

To state a claim for deprivation of a liberty interest, the plaintiff must first show "such an interest exist[ed] and then that the liberty interested was infringed upon." *See Workman*, 32 F.3d at 480. "The liberty interest that due process protects includes the individual's freedom to earn a living." *Lentsch v. Marshall*, 741 F.2d 301, 303 (10th Cir. 1984). Plaintiff contends that Ouray and Yeowell deprived him of the liberty right to practice his profession.

The problem with Plaintiff's contention manifestly involves the infringement requirement. The complaint does not allege any way in which Ouray or Yeowell precluded or impaired Plaintiff's ability to work as an EMT-Paramedic for someone else–for example, by revoking his certification

or stigmatizing him in some way. *See, e.g., Phelps*, 886 F.2d at 1269 (discussing that because plaintiff-lawyer was not foreclosed from practicing law, he failed to state a deprivation of liberty interest); *and Roth*, 408 U.S. at 573-74 (discussing stigmatization). This is because Plaintiff's liberty interest in practicing as an EMT-Paramedic is not implicated merely by his current employer suspending or terminating him.  More is needed. As the Supreme Court explained in *Roth*,

> [t]here might be cases in which a State refused to re-employ a person under such circumstances that interests in liberty would be implicated. But this is not such a case.
>
> The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential. In such a case, due process would accord an opportunity to refute the charge before University officials. In the present case, however, there is no suggestion whatever that the respondent's good name, reputation, honor, or integrity is at stake.
>
> Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. The State, for example, did not invoke any regulations to bar the respondent from all other public employment in state universities. Had it done so, this, again, would be a different case.

408 U.S. at 573-74 (internal quotations and citations omitted); *see also Workman*, 32 F.3d at 480-81. Plaintiff's complaint contains no allegations of this kind, aside from the conclusory assertion that Ouray and Yeowell "deprived [him] of his liberty . . . including but not limited to his right of employment unless terminated for cause."  This is a legal conclusion whose truth is not assumed. Plaintiff therefore fails to allege an implicated liberty interest. *See Roth, supra.*

For the foregoing reasons, Plaintiff fails to nudge his § 1983 claim "across the line from

conceivable to plausible." *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Accordingly, I grant the appurtenant portions of the motions.

### B. The § 1985(3) Conspiracy Claim

The motions next argue that Plaintiff's § 1985(3) conspiracy claim should be dismissed because Plaintiff does not allege that he is a member of a qualifying class or that his membership in a qualifying class was a motivating factor in the alleged conspiracy, as required by *Lessman v. McCormick*, 591 F.2d 605 (10th Cir. 1979). Plaintiff does not object to dismissing the claim. Accordingly, I grant this portion of both motions.

### C. The Remaining State Law Claims

Because Plaintiff's two federal claims have been dismissed, *see* Parts III.A and B, *supra*, only his state law claims remain. Plaintiff asserts that I have supplemental jurisdiction over them. "Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if 'the district court has dismissed all claims over which it has original jurisdiction.'" *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011). Denials of supplemental jurisdiction are reviewed for abuse of discretion. *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1172 (10th Cir. 2009).

Pursuant to § 1367(c)(3), I decline to exercise supplemental jurisdiction over Plaintiff's remaining claims. Invoking § 1367(c)(3) to decline supplemental jurisdiction is permissive. *See* § 1367(c)(3) ("The district courts *may* decline to exercise supplemental jurisdiction over a claim . . . .") (emphasis added). There is, however, a predilection for declination here: "When all federal claims have been dismissed, the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims." *Koch*, 660 F.3d at 1248 (quoting *Smith v. City of Enid ex rel. Enid City*

*Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998)) (emphasis added). Indeed,

> [u]nder th[ese] circumstances the most common response to pretrial disposition of federal claims has been to dismiss the state law claim or claims without prejudice–that is the seminal teaching of *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), reconfirmed in *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988), and repeated in a host of cases such as *Saywer v. County of Creek*, 908 F.2d 663, 668 (10th Cir. 1990).

*Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995); *accord Thatcher Enterprises v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990) ("If the federal claim is dismissed before trial . . . the state law claim will generally be dismissed as well."). This advances judicial economy, fairness, convenience, federalism, and comity. *Ball*, 54 F.3d at 669; *Thatcher*, 902 F.2d at 1478. That notwithstanding, if there is a compelling reason for the federal court to retain jurisdiction–for example, if doing so would advance those ends enumerated above–it should do so. *See Thatcher*, 902 F.2d at 1478. But I see no reason suggesting that is the case here.

Hence, I hew to the established preference and decline to exercise supplemental jurisdiction over Plaintiff's remaining state claims and dismiss them without prejudice. I therefore deny the applicable portions of the motions as moot.

## IV. Conclusion

For the foregoing reasons, I GRANT both Ouray's Motion to Dismiss **[Doc # 6]** and Yeowell's Motion to Dismiss **[Doc #13]** insofar as each seeks to dismiss Plaintiff's two federal law claims; and I DENY as moot the remaining portions of both motions because I dismiss without prejudice the state law claims as a result of declining supplemental jurisdiction over them.

Date: January   13  , 2012 in Denver, Colorado.


BY THE COURT:


  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE